IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LORRIE G.-C., ) | |
| ) | |
| Plaintiff, ) | Case No. 1:22-cv-4806 |
| v. ) | |
| ) | Magistrate Judge Jeannice W. Appenteng |
| LELAND DUDEK, Acting ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lorrie G.-C. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and plaintiff filed a brief explaining why the Commissioner's decision should be reversed and the case remanded. The Commissioner responded with a competing motion for summary judgment in support of affirming the decision. After review of the record and the parties' respective arguments, the Court finds that the case must be remanded for further proceedings.

## BACKGROUND

Plaintiff protectively applied for DIB on December 1, 2019 alleging disability since November 22, 2019 due to low vision and strokes affecting balance, walking, and memory. Administrative Record ("R.") 216, 239. Born in September 1968,

---

[1] Leland Dudek became the Acting Commissioner of Social Security on February 16, 2025. He is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

plaintiff was 51 years old as of the alleged onset date, making her a person closely approaching advanced age (age 50-54). 20 C.F.R. § 404.1563(d); R. 216. She has an Associate's degree and worked in telephone sales. R. 36, 50, 240-41. After suffering a series of strokes, plaintiff stopped working in November 2019 and has not engaged in substantial gainful activity since that date. R. 55, 239.

The Social Security Administration denied plaintiff's application initially on October 12, 2020, and upon reconsideration on April 20, 2021. R. 84-124. Plaintiff filed a timely request for a hearing and on October 12, 2021, she appeared before an administrative law judge ("ALJ"). R. 44. The ALJ heard testimony from plaintiff, who was represented by counsel but appeared with a non-attorney representative, and from vocational expert Gail Ryan (the "VE").[2] R. 46-83. On November 26, 2021, the ALJ found that plaintiff's depression, mild cognitive impairment, borderline personality disorder, cerebrovascular accident, vision loss of the left eye, non-proliferative diabetic retinopathy, diabetes, Factor V Leiden (a genetic mutation that affects the blood clotting process), congestive heart failure, and obesity are severe impairments, but that they do not alone or in combination with her non-severe impairments meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 24-28.

After reviewing the evidence, the ALJ concluded that plaintiff has the residual functional capacity ("RFC") to perform light work involving: no work around unprotected heights or dangerous heavy moving machinery; no driving or

---

[2] The hearing was held telephonically due to the COVID-19 pandemic.

2

operating commercial vehicles; understanding, remembering, and carrying out simple, routine one to three-step instructions; and occasional changes to the work environment. R. 28-36. The ALJ accepted the VE's testimony that a person with plaintiff's background and this RFC could not perform plaintiff's past sales work, but could perform a significant number of other jobs available in the national economy. R. 36-38. As a result, the ALJ concluded that plaintiff was not disabled at any time from the alleged disability onset date through the date of the decision. R. 38. The Appeals Council denied plaintiff's request for review on July 11, 2022. R. 1-5. That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of her request for reversal or remand, plaintiff argues that the ALJ: (1) erred in finding her capable of sustaining employment despite repeated hospitalizations; (2) failed to properly account for her moderate limitations in concentration, persistence, or pace; (3) made a flawed physical RFC determination; and (4) improperly discounted her subjective statements regarding her symptoms. For reasons discussed in this opinion, the Court finds that the case must be remanded for further consideration of plaintiff's ability to meet the attendance requirements of full-time work throughout the relevant period.

**DISCUSSION**

A.  **Standard of Review**

A claimant is disabled within the meaning of the Social Security Act if she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether [the claimant] has a severe impairment or a combination of impairments that is severe; (3) whether [the claimant's] impairments meet or equal any impairments listed as conclusively disabling; (4) whether [the claimant] can perform . . . past work; and (5) whether [the claimant] is capable of performing any work in the national economy." *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)-(g)). If the claimant meets her burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Id.*

In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (quoting *Gedatus*, 994 F.3d at 900). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97,

4

103 (2019) (citation omitted). "[S]ocial-security adjudicators are subject to only the most minimal of articulation requirements," and ALJs need only provide "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1053-54 (internal quotations omitted) (in "shorthand terms," an ALJ must build a "logical bridge from the evidence to his conclusion"); *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

**B.     Analysis**

    **1.     Excessive Absenteeism**

Plaintiff argues that the case must be reversed or remanded because the ALJ erred in finding her capable of meeting the attendance requirements of full-time employment despite her repeated hospitalizations. Dkt. 14 at 4-6; Dkt. 21 at 2-4.[3] Between the November 22, 2019 alleged disability onset date and October 23, 2020, plaintiff was hospitalized eight times due to her mental and physical impairments. Plaintiff suffered a stroke on November 22, 2019 and spent 20 days in the hospital followed by 37 days in inpatient rehabilitation. R. 29-30, 65, 1034. Her diagnoses at the time of discharge on January 17, 2020 included acute infarct of the occipital lobe, poststroke hypotension, and uncontrolled diabetes. R. 651. After two more brief hospitalizations in late January and early February 2020 for episodes of leg weakness and diabetic ketoacidosis, R. 30, 2158, 2211, 222, plaintiff attempted to

---

[3] This opinion cites to the CM/ECF number at the top of the page.

commit suicide on March 7, 2020 by overdosing on insulin. R. 30, 1238, 1319, 1363. She was diagnosed with major depressive disorder, mild cognitive impairment, and borderline personality disorder, and remained in the hospital until March 19, 2020. R. 1363.

Plaintiff made another suicide attempt on May 27, 2020 and was hospitalized until June 2, 2020. R. 1441-42. She was back in the hospital from June 8 to June 11, 2020 due to left arm and hand numbness and tingling, R. 1891, 2336, 3052, and then again from June 29 to July 1, 2020 due to dizziness and a fall caused by hyperglycemia. R. 1782. In September 2020, plaintiff spent three days in the hospital after her legs "stopped listening to my brain." R. 1696. Finally, plaintiff was hospitalized from October 15 to October 23, 2020 for increased depression and suicidal ideation after she lost her health insurance and was unable to take her medication. R. 1619, 3573. All told, plaintiff spent more than 100 days in the hospital.

The ALJ discussed these hospitalizations but still found plaintiff capable of engaging in full-time work, R. 29-32, 38, defined as "approximately eight hours a day for five days a week." *Spaulding v. Berryhill*, No. 16 C 6298, 2017 WL 3922878, at *8 (N.D. Ill. Sept. 7, 2017) (citing SSR 96-8p). Plaintiff argues that this conclusion is incorrect, stressing the VE's testimony that employers will only tolerate one unexcused absence per month and "not on a continual basis." R. 75. Here, there can be little dispute that during the period from November 22, 2019 through at least October 23, 2020, plaintiff would have been absent far more than

6

once per month due to her severe physical and mental impairments. Dkt. 14 at 5-6; Dkt. 21 at 2-3. Yet the ALJ did not address this issue or explain how plaintiff could nonetheless satisfy the attendance requirements of full-time employment. *See Couillard v. Berryhill*, No. 18 C 486, 2019 WL 1379887, at *9 (E.D. Wis. Mar. 27, 2019) (remanding for a determination as to whether the plaintiff's "limitation in her ability to maintain regular work attendance, including as a result of hospitalization, emergency room visits and doctor appointments, is work preclusive").

The Commissioner responds that plaintiff needed to show that her "appointments could not be arranged around a full-time . . . position schedule by scheduling them prior to work, after work, or on a non-work day or over a lunch hour to avoid missing work." Dkt. 20 at 8-9 (quoting *Chestine G. v. Saul*, No. 18 C 4980, 2020 WL 1157384, at *10 (N.D. Ill. Mar. 10, 2020)). It is unclear, however, how plaintiff was supposed to schedule emergency hospitalizations for such events as strokes and suicide attempts during non-working hours. *Compare Chestine G.*, 2020 WL 1157384, at *9-10 (rejecting argument that plaintiff would be absent more than 12 to 18 days per year for primary care appointments, physical therapy, and chiropractic treatments); *Paul M. v. Saul*, No. 19 C 4581, 2021 WL 794981, at *6 (N.D. Ill. Mar. 2, 2021) ("Paul never establishes that he could only attend physical therapy during work hours, or that he would need to miss full days to attend such sessions").

Nor is the Court persuaded by the Commissioner's suggestion that plaintiff is not disabled because she was hospitalized for less than 12 months. Dkt. 20 at 8

7

(citing 20 C.F.R. § 404.1505(a)). Disability requires evidence of a severe impairment lasting a continuous period of at least 12 months, regardless of any hospitalizations. *See Jennifer W. v. O'Malley*, No. 21 C 1805, 2024 WL 4802564, at *2 (N.D. Ill. Nov. 15, 2024) ("[T]he durational requirements cited by the Commissioner only concern whether the claimant's condition can rise to the level of a severe impairment that would permit a finding that the claimant is disabled, as defined in the Social Security Act"). The ALJ found that plaintiff has several such severe impairments at Step 2 of the sequential analysis, R. 24, and said nothing about attendance in her decision.

Viewing the record as a whole, the ALJ did not build a logical bridge from the evidence to her conclusion that plaintiff has been capable of meeting the attendance requirements of full-time work since the November 22, 2019 alleged disability onset date. *Warnell*, 97 F.4th at 1054. The case must be remanded for further consideration of this issue.

### 2. Remaining Arguments

Having concluded that a remand is required, the Court will not address plaintiff's remaining arguments. That said, the ALJ should take the opportunity on remand to reassess all aspects of plaintiff's mental and physical RFC considering the opinion and testimonial evidence of record.

### CONCLUSION

For the reasons stated above, plaintiff's request to reverse or remand the case is granted, and the Commissioner's motion for summary judgment [19] is denied.

8

Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

**SO ORDERED.**

**Dated: 3/26/2025**

                                                      **Jeannice W. Appenteng**
                                                      **United States Magistrate Judge**